UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CONRAD MURPHY,
        Petitioner,


        v.                                          CIVIL ACTION NO.
                                                    15-11130-IT

STEVEN O'BRIEN,
        Respondent.

**REPORT AND RECOMMENDATION RE:
RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION
TO THE PETITION FOR HABEAS CORPUS
(DOCKET ENTRY # 43)**

**September 26, 2016**

**BOWLER, U.S.M.J.**

Respondent Steven O'Brien ("respondent"), superintendent of the Massachusetts Treatment Center in Bridgewater, Massachusetts ("the treatment center"), seeks to deny a petition for writ of habeas corpus filed under 28 U.S.C. § 2254 ("section 2254") by petitioner Conrad Murphy ("petitioner"), a civilly committed individual at the treatment center. (Docket Entry # 43).  The petition attacks an adjudication of petitioner as a sexually dangerous person ("SDP") under section 14 of Massachusetts General Laws chapter 123A ("chapter 123A") by a justice of the Massachusetts Superior Court (Middlesex County) ("the trial court").  (Docket Entry # 1).

The petition raises one ground for relief, namely, whether section 14(b) of chapter 123A "authorize[s] a state court to compel an individual to interview with both state court-appointed

qualified examiners and condition [petitioner's] request for defense funds to hire experts on his behalf upon the completion of [petitioner's] interviews with both of the state qualified examiners[.]" (Docket Entry # 1, p. 17) (Docket Entry ## 2, 25, p. 2).[1]  In supporting memoranda, petitioner maintains that the trial court compelled him to undergo interviews with two court appointed qualified examiners as a condition of the court approving his request for funds to hire two experts on his behalf.  As such, it was a violation of procedural and substantive due process under the Fifth and Fourteenth Amendments, a denial of effective assistance of counsel under the Sixth Amendment and a denial of his right to prepare a defense.[2] (Docket Entry ## 2, 25, pp. 2-3, 12-15, 23-25).  Respondent argues that the ground for relief is:  (1) based on state law;

---

[1]  Page numbers refer to the page as docketed as opposed to the page in the filing.

[2]  Respondent argues that, "*To the extent* the petitioner alleges that the conditional allowance of his motion for funds violated several of his constitutional rights, Doc. 25 at 14, 21-29, including his rights to equal protection, . . . the petitioner's rights were not violated because his failure to interview with the two qualified examiners rendered the evidence based on an interview with his own expert inadmissible." (Docket Entry # 43) (emphasis added).  The petition does not refer to an equal protection violation and the supporting memoranda refer to "equal protection" only once in the 36 page filings. (Docket Entry ## 2, 25, p. 23).  Because the equal protection "claim" is only referenced once in the supporting memoranda and, even then, only for the statement that the Massachusetts Constitution does not contain the phrase "equal protection," the petition does not include such a claim.  See Logan v. Gelb, 790 F.3d 65, 709 (1st Cir. 2015).

(2) subject to procedural default because the Massachusetts
Appeals Court ("the appeals court") determined that petitioner
did not object to the condition and did not file a timely
interlocutory appeal; and (3) the claim fails to withstand
section 2254(d) and/or de novo review.  (Docket Entry # 43).

Petitioner seeks an evidentiary hearing to clarify whether
the appeals court was referring to petitioner's March 9, 2009
motion for expert funds (Docket Entry # 21, S.A. 120, 123, 232)
or his October 19, 2011 motion to vacate the judgment (Docket
Entry # 21, S.A. 117) (Docket Entry # 48-2, pp. 45-66) when it
addressed the "[c]onditions attached to expert funds" issue in a
January 17, 2014 opinion (Docket Entry # 21, S.A. 433).  (Docket
Entry # 48).  There is no need for clarification.  On March 18,
2009, the trial court allowed the former motion but conditioned
the allowance of fees on petitioner first completing interviews
with the Commonwealth's two qualified examiners.[3]  (Docket Entry
# 21, S.A. 114).  On July 16, 2012, the trial court denied the
latter motion.  (Docket Entry # 21, S.A. 118).  Petitioner's
appeal to the appeals court sought review of the March 18, 2009
ruling (Docket Entry # 21, S.A. 15) as opposed to the July 16,

---

[3]   "The qualified examiners mentioned in G.L. c. 123A, §
13(a), are independent experts appointed by the court."
Commonwealth v. Connors, 850 N.E.2d 1038, 1040 (Mass. 2006).  The
above-noted court appointed qualified examiners are the two
individuals the Commonwealth requested in a motion seeking their
appointment.  Accordingly, they are referred to as the
Commonwealth's qualified examiners.

2012 ruling.  In fact, neither petitioner's 50-page appellate brief nor his 19-page reply brief discussed the July 16, 2012 ruling on the motion to vacate.  In contrast, petitioner's appellate brief is replete with references challenging the March 18, 2009 ruling and related rulings.  Although the October 19, 2011 motion to vacate included arguments overlapping those raised in petitioner's appellate brief, the focus of petitioner's appellate brief and the Commonwealth's opposition centered on the March 18, 2009 ruling that conditionally allowed the motion for expert funds.  In light of this presentation of the expert funds issue, the appeals court addressed the denial of the March 9, 2009 motion as opposed to the October 19, 2011 motion to vacate.

Moreover, review under section 2254(d) is limited to the record before the state court such that new evidence introduced at an evidentiary hearing before this court would have no bearing on this court's section 2254(d) review.  See Cullen v. Pinholster, 563 U.S. 170, 181-182 (2011); Garuti v. Roden, 733 F.3d 18, 22 (1st Cir. 2013).  "'[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.'"  Atkins v. Clarke, 642 F.3d 47, 49 (1st Cir. 2011) (quoting holding in Cullen v. Pinholster, 563 U.S. at 181).  Review under section 2254(d)(2) is likewise "limited to the record that was before [the] state court."  Brown v. O'Brien, 666 F.3d 818, 822 n.3 (1st Cir. 2012);

see Garuti v. Roden, 733 F.3d at 23 ("the evidentiary hearing bar applies to review under both sections of § 2254(d)"). Accordingly, an evidentiary hearing is not warranted in the case at bar.

In any event, there is no showing that an evidentiary hearing would enable petitioner to develop a factual record that would warrant habeas relief. Before allowing an evidentiary hearing, a federal "habeas judge 'must first consider whether such hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.'" Companonio v. O'Brien, 672 F.3d 101, 112 (1st Cir. 2012) (quoting Teti v. Bender, 507 F.3d 50, 62 (1st Cir. 2007)). The petitioner "must therefore demonstrate that his allegations would entitle him to relief and that the hearing is likely to elicit the factual support for those allegations." Id. (emphasis added). As indicated above, the appeals court reviewed the March 18, 2009 decision and related rulings as opposed to the July 16, 2012 ruling on the October 19, 2011 motion to vacate when the court addressed the conditions attached to the expert funds.

PROCEDURAL BACKGROUND

In 1990, petitioner was convicted of assault with intent to rape and indecent assault and battery. (Docket Entry # 21, S.A. 92, 471-474, 512-513). These convictions eventually provided the

sexual offenses that served as the governing offenses for the trial court's adjudication of petitioner as an SDP. (Docket Entry # 21, S.A. 145, 150).

In January 2005, the Commonwealth filed a petition to commit petitioner as an SDP pursuant to section 12B of chapter 123A. (Docket Entry # 21, S.A. 109). In May 2006, the trial court found probable cause to believe that petitioner was an SDP and, as provided for by section 13(a) of chapter 123A, ordered petitioner committed to the treatment center for 60 days for an examination by the Commonwealth's two qualified examiners. (Docket Entry # 21, S.A. 110). On July 7, 2006, the qualified examiners filed their reports in accordance with section 14(a) of chapter 123A. (Docket Entry # 21, S.A. 110). On July 12, 2006, the Commonwealth filed a petition for trial and petitioner moved to stay the proceedings one week later in order to exhaust his state and federal court remedies to collaterally attack the governing offense[s]. (Docket Entry # 21, S.A. 110).

In April 2008, the Commonwealth filed a motion for the two qualified examiners to re-examine petitioner. (Docket Entry # 21, S.A. 112). In early March 2009, petitioner filed the aforementioned motion seeking funds in the amount of $5,500 to retain two experts to counter the expected testimony of the

Commonwealth's two qualified examiners.[4]  On March 18, 2009, the trial court conducted a hearing on both motions.  After the hearing, the trial court allowed the Commonwealth's motion to re-examine petitioner and set a deadline of May 17, 2009 for the examiners to file their reports.  Also after the hearing, the trial court allowed petitioner's motion but only if petitioner completed interviews with both of the Commonwealth's qualified examiners.  (Docket Entry # 21, S.A. 113-114, 120-123, 232-235). The ruling reads as follows:

> ALLOWED TO THE EXTENT THAT AFTER [petitioner] completes his interviews with the Commonwealth's Qualified Examiners,

---

[4]  Section 14(b) of chapter 123A gives the trial court discretion to allow a petitioner to retain experts on his behalf. In pertinent part, the statute reads as follows:

> [T]he person named in the petition *may* retain experts or professional persons to perform an examination on his behalf . . . If the person named in the petition is indigent under said section 2 of said chapter 211D, the court *shall*, upon such person's request, *determine whether the expert or professional services are necessary and shall determine reasonable compensation for such services*.  If the court so determines, the court shall assist the person named in the petition in obtaining an expert or professional person to perform an examination and participate in the trial on such person's behalf.  The court shall approve payment for such services upon the filing of a certified claim for compensation . . . *The court shall inform the person named in the petition of his rights under this section before the trial commences*.  The person named in the petition shall be entitled to have process issued from the court to compel the attendance of witnesses on his behalf.  If such person intends to rely upon the testimony or report of his qualified examiner, the report must be filed with the court and a copy must be provided to the district attorney and attorney general no later than ten days prior to the scheduled trial.

Mass. Gen. Laws ch. 123A, § 14(b) (emphasis added).

which interviews are to be tape recorded and preserved, the [petitioner's] two experts may incur the requested fees. The Court approves up to $2,700.00 for Dr. Brown and up to $2,225.00 for Dr. Kriegman . . ., but this approval of fees is conditioned on the [petitioner] first completing his interviews with the two Commonwealth Qualified Examiners.

(Docket Entry # 21, S.A. 114, 121, 123, 233, 235).

On May 6, 2009, one of the Commonwealth's qualified examiners, Carol Feldman, Ph.D. ("Dr. Feldman"), a forensic psychologist, attempted to interview petitioner. (Docket Entry # 21, S.A. 463-464, 471). Petitioner refused and, relying on the records, Dr. Feldman filed an updated report with the trial court on May 13, 2009. (Docket Entry # 21, S.A. 114, 471). On May 22, 2009, the other qualified examiner, Cornelius Kiley, Ph.D. ("Dr. Kiley"), a forensic psychologist, submitted an updated report. Unlike Dr. Feldman, Dr. Kiley completed an interview with petitioner and based his report, in part, on the interview. (Docket Entry # 21, 114, 511-512).

On May 28, 2009, the trial court issued a second ruling on petitioner's motion for funds. In this ruling, the trial court denied the motion because petitioner had not completed both interviews and conditioned approval of funds for petitioner's experts on his completion of the interview within ten days. The ruling states that:

Since the allowance of the [petitioner's] Motion for [F]unds for Qualified Examiners was allowed by another Justice of this Court, conditioned on the completing of interviews with the two Commonwealth's Qualified Examiners and the [petitioner] refused an interview with one of them, his

8

motion (P#73) is DENIED unless he complies within 10 days. (Docket Entry # 21, S.A. 114, 124, 236).

In June 2009, petitioner's counsel prepared but did not file an application for an interlocutory appeal of the denial of funds for petitioner's experts.  The draft motion sought to file the appeal pursuant to Massachusetts General Laws chapter 231, section 118.  (Docket Entry # 21, S.A. 19, 20, 114, 125).

On August 20, 2009, the trial court had a hearing and, after reviewing the March 18 and May 28, 2009 rulings, ordered petitioner to submit to an interview with Dr. Feldman by September 30, 2009.  If petitioner did not submit to the interview, then the fees for his experts would not be approved. (Docket Entry # 21, S.A. 115, 123, 130, 235).  The August 20, 2009 Order provides as follows:

> 1.  [Petitioner] now having agreed to be examined by the second Qualified Examiner designated by the Commonwealth, it is hereby ORDERED that [petitioner] submit to an examination by Dr. Feldman as soon as possible, and under the conditions set forth in [the] Order of March 18, 2009 . . ..
>
> 4.  If and when [petitioner] complies with Paragraph 1 of this Order, the remainder of [the] Order of 3/18/09, with respect to examination by his own Qualified Examiners, shall take effect.

(Docket Entry # 21, S.A. 115, 130).

Petitioner did not submit to an examination or interview by Dr. Feldman.  On October 1, 2009, Dr. Feldman filed another updated report.  (Docket Entry # 21, S.A. 115).

On July 21 and 22, 2010, the trial court conducted a jury-

waived trial.  At the outset of the trial, the trial court
conducted a colloquy with petitioner about his decision to waive
a jury trial.  In response to a question by the trial court
inquiring if anyone was forcing him to proceed without a jury,
petitioner responded, "You are."  (Docket Entry # 21, S.A. 451).
He then explained that the March 18, 2009 Order denied him funds
for his experts if he refused to speak to the Commonwealth's
qualified examiners, which he viewed as "an abuse of discretion."
(Docket Entry # 21, S.A. 452).  The trial court responded that
petitioner could appeal and, in fact, he had "had a year and a
half to appeal."  (Docket Entry # 21, S.A. 452-453).  The trial
court also asked petitioner's counsel if it was a tactical
decision not to ask for a reconsideration of the March 18, 2009
Order after petitioner interviewed with Dr. Kiley.  Petitioner's
counsel replied that he "thought that Your Honor" and the Justice
who issued the August 20, 2009 Order "made it quite clear that
the onus was on [petitioner] to cooperate in order to secure
funds." (Docket Entry # 21, S.A. 459-460).  The trial court then
posited that she might have reconsidered and allowed petitioner
funding for one expert.  (Docket Entry # 21, S.A. 460).

The trial then proceeded over the course of two days.  The
Commonwealth's qualified examiners, Drs. Feldman and Kiley,
testified whereas petitioner did not offer any testimony from a
qualified examiner or an expert report.  After the testimony

concluded, the trial court asked petitioner if he wished to be heard on the issue of funds.  In response, petitioner "request[ed] not to be heard on the issue." (Docket Entry # 21, S.A. 539-540).

At the end of the two-day trial, the court heard argument on petitioner's pro se motion to dismiss the SDP petition because the Commonwealth had not filed a timely petition for a trial within 14 days of the filing of the qualified examiners' reports. (Docket Entry # 21, S.A. 115, 131-139, 564-566).  On July 28, 2010, the trial court denied the motion in a four-page decision.

In early August 2010, the trial court rendered a decision finding that petitioner was an SDP and committed him to the treatment center.  (Docket Entry # 21, S.A. 116, 144-154). Petitioner filed a timely appeal.

On October 19, 2011, petitioner filed a motion and memorandum to vacate the judgment of sexual dangerousness and to dismiss the Commonwealth's civil commitment petition.  (Docket Entry # 21, S.A. 117).  On July 16, 2012, the trial court denied the motion.  (Docket Entry # 21, S.A. 118).

In the appellate brief, petitioner raised one of the alleged constitutional violations he presents to this court, namely, the right to present a defense because of the trial court's conditional allowance of the funds for petitioner's qualified examiners.  (Docket Entry # 21, S.A. 4, 34-35).  The Commonwealth

11

addressed the right to present a defense claim in its appellate brief and cited Commonwealth v. Connors, 850 N.E.2d 1038, 1042-1043 n.9 (Mass. 2006).  (Docket Entry # 21, S.A. 399-400).  In the reply brief, petitioner raised the due process argument he presents in the petition that the trial court's condition went beyond the clear language of section 14(b) in violation of due process.[5]  (Docket Entry # 21, S.A. 412-416).

Petitioner also presented to the appeals court an ineffective assistance of counsel claim under the Sixth Amendment because "counsel was not competent to defend" him.  (Docket Entry # 21, S.A. 4, 35, 419-421).  In particular, in the appellate brief and the reply brief, petitioner argued a denial of effective assistance of counsel because counsel failed to file the interlocutory appeal and because counsel could not understand the illegality of the March 18, 2009 without a lengthy explanation from petitioner.  (Docket Entry # 21, S.A. 35, 419-421).  The Commonwealth addressed the ineffective assistance of counsel claim albeit solely on the basis that it was not properly presented to the appeals court under state law.  (Docket Entry # 21, S.A. 400).

On January 17, 2014, the appeals court denied the appeal and affirmed the judgment.  The portion of the decision that

---

[5]  Petitioner's appellate brief raises an additional due process claim seeking compensatory damages that is not presented to this court.  (Docket Entry # 21, S.A. 5, 54-55).

addressed the trial court's placement of conditions on the funds

for petitioner's experts reads as follows:

> *Conditions attached to expert funds.*  The petitioner moved
> for funds to hire two experts to testify on his behalf.  A
> Superior Court judge allowed the motion on the condition
> that the petitioner first complete interviews with the
> Commonwealth's two qualified examiners.  The petitioner did
> not object to the condition and did not appeal from it.  He
> also refused to be interviewed by one of the Commonwealth's
> qualified examiners.  Accordingly[,] he waived this issue
> and it is not properly before us.

(Docket Entry # 21, S.A. 433).[6]  At this point, the appeals

court, in a footnote, addressed the merits of the trial court's

condition by stating, "As the Commonwealth points out, the

petitioner's refusal to be interviewed also made his own hiring

of expert witnesses unnecessary, removing any arguable right on

his part to retain those experts.  Commonwealth v. Connors, 447

Mass. 313, 317 (2006)."  (Docket Entry # 21, S.A. 433).  The

language tracks language in the Commonwealth's appellate brief

which reads, "[B]ecause the expert services the defendant sought

would be inadmissible and thus unnecessary unless he interviewed

with the two court-appointed qualified examiners, the judge

properly conditioned her allowance of the defendant's motion for

funds."  (Docket Entry # 21, S.A. 386, 388).  Section 13(a) of

---

[6]   The basis of the ruling directly impacts the arguments by
the Commonwealth that the decision rests on state law and
constitutes a procedural default.  It also raises the issue of
whether the appeals court addressed the merits of the federal
constitutional claims thereby leading to section 2254(d) review.
Accordingly, the basis of the appeals court's decision warrants a
detailed examination.

chapter 123A requires an "examination" of an SDP defendant by "two qualified examiners," who then file reports with the court. Mass. Gen. L. ch. 123A, § 13(a).  The term "examination" is synonymous with interview.  See Commonwealth v. Connors, 850 N.E.2d at 1041 n.7.

At the page in Connors cited by the appeals court, the Connors court explained that section 13(a) "'mandates that the defendant be examined by two qualified examiners'" but "does not explicitly state whether the allegedly sexually dangerous person may offer his or her own expert testimony, while refusing to allow the court-appointed qualified examiners to conduct their own examinations." Id. at 1041-1042.  Mindful of the statute's purpose "to remedy any imbalance that could occur" in SDP proceedings, id. at 1041 n.7, the SJC concluded that an SDP defendant could not offer expert testimony based on personal interviews while refusing to submit to interviews by the two, court appointed qualified examiners.[7]  Id. at 1042.  Placed in context, the passage in the footnote in the appeals court

---

[7]  Admitorily, Connors did not directly address the issue of whether a defendant can obtain funds to present testimony of one qualified examiner (based on a record review and/or interview) when the defendant submits to one interview by one qualified examiner but refuses to submit to an interview by the other qualified examiner.  As noted in Connors, however, section 13(a) "'mandates that the defendant be examined by two qualified examiners.'"  Id. at 1043.  In footnotes, the court in Connors also recognized "there is an imbalance of the evidence" when a party offers his own expert testimony based on personal interviews but does not submit to the interviews of the court appointed examiners.  Id. at 1042 n.8 & 9 (citing state law).

decision citing <u>Connors</u> and tracking the Commonwealth's appellate
brief (Docket Entry # 21, S.A. 386, 388, 433) does not address
the merits of the federal constitutional claims raised in the
petition, i.e., the right to present a defense, effective
assistance of counsel and due process.  Rather, it addresses the
state law issue that, without interviews with the Commonwealth's
two qualified examiners as required under section 13(a),
petitioner lacked any arguable right to retain his own experts.
(Docket Entry # 21, S.A. 433).

In a *separate* section of the decision, the appeals court
rejected a number of petitioner's constitutional claims including
the right to present a defense and the right to effective
assistance of counsel "for substantially the reasons set forth in
the Commonwealth's brief at pages 31 to 35."[8]  (Docket Entry #
21, S.A. 434).  The pages in the Commonwealth's brief addressed
inter alia the right to present a defense based on the condition
for the funding of petitioner's experts as a constitutional

_____

[8]  The appeals court's reasoning and the ruling is as
follows:

> Additional claims.  As noted, the petitioner has raised a
> plethora of additional claims including double jeopardy,
> prosecutorial misconduct, insufficiency of the evidence,
> ineffective assistance of counsel, and violations of the
> United States Constitution and the Massachusetts Declaration
> of Rights.  We discern no merit in any of these claims, for
> substantially the reasons set forth in the Commonwealth's
> brief at pages 31 through 35.

(Docket Entry # 21, S.A. 434).

violation as well as the ineffective assistance of counsel claim. (Docket Entry # 21, S.A. 399-403, 434).

After the appeals court affirmed the judgment, petitioner filed an application for further appellate review ("ALOFAR") with the Massachusetts Supreme Judicial Court ("SJC").  The ALOFAR outlined the relevant decisions by the trial court regarding the conditions placed on petitioner's funding for qualified examiners.  (Docket Entry # 21, S.A. 257-261).  The statement of points with respect to which petitioner sought review identified the due process issue he presents to this court, i.e., whether the trial "judge assumed an inappropriate role in authorizing payment of funds to hire two experts to testify on his behalf" in violation of due process.  (Docket Entry # 21, S.A. 261).  The ALOFAR also asserted that dismissal of the Commonwealth's SDP petition was appropriate based on the violation of section 14(b) due to the denial of due process "before the deprivation of his liberty interest and a nonexistent postdeprivation remedy." (Docket Entry # 21, S.A. 268) (emphasis omitted).  On April 30, 2014, the SJC summarily denied the ALOFAR.  (Docket Entry # 21, S.A. 351).

<u>FACTUAL BACKGROUND</u>

As recounted by the trial court, the facts, which petitioner fails to rebut with clear and convincing evidence, <u>see</u> 28 U.S.C.

§ 2254(e), are as follows:[9]

Conrad Murphy, born in 1969, is 41 years old. In his youth, Mr. Murphy had poor attendance at school, was a "special needs" student and became a depressed adolescent.  He had problems with obesity since age 9 and had intestinal bypass surgery at age 13. See Ex. 21.  A report by an LICSW who interviewed him in 1987 after his arrest on the 1987 offenses indicates Mr. Murphy:

> "is an impulsive, angry young man who vacilates [sic] between depression and general inertia and massive denial of these feelings that then turns the anger outward toward others.  He projects all of his responsibility for his actions onto his victims and accepts none of it for himself.  He has a very poor self image and little internalized maturity for a young man of 18 years old.  He is a passive, dependent person who has relied on mental health professionals as well as hi[s] mother to excuse him from taking on life responsibilities because of his weight problems, and academic problems.  However, he is not mentally retarded, appears to know the difference between right and wrong behavior which is substantiated by the psychological testing data." Exhibit 21.

In 1989, Mr. Murphy was convicted of Assault and Battery and received a one-year suspended sentence for an offense that occurred in 1987. In June 1989, while he was on probation on this suspended sentence, Mr. Murphy committed the following offenses, and in 1990 was convicted and received the following concurrent sentences:

1. Mayhem 14-17 Years

2. Indecent Assault and Battery 3-5 years

3. Assault with Intent to Rape 14-17 years

4. Assault with Intent to Kill 14-17 years

5. Assault and Battery by means of Dangerous Weapon 8-10 years (suspended for 3 years; probation for 3 years)

The facts of this June 1989 crime, the Governing Offense,

---

[9]  Footnotes in the trial court's findings are not included.

are particularly horrific.  Mr. Murphy lived in the same
housing project as the 16 year old female victim.  She had
gone to his house on June 3, 1989 to await her mother's
arrival at home.  When she tried to leave his home, Murphy
"began[10] hitting her on the head and face with the clawed
end of a hammer.  He beat her repeatedly on the nose, eye,
ear and head.  When the victim began to scream, (Murphy)
repeatedly threatened to kill her . . . . He  continued to
beat her until she fell back on the bed.  She was bleeding
profusely from numerous wounds to her face and head . . .
(He) pulled her pants and panties down to her knees as he
repeatedly threatened to kill her.  He exposed his penis and
placed it between her legs. He then pulled her by the hair,
rolled her over onto her stomach and placed h[is] penis
between her legs.  As she pleaded with him to let her go,
the [petitioner] stated, "The only place you're going is to
the cemetery because I'm getting ready to kill you."  As she
screamed, he smashed her in her jaw with the hammer.
Exhibit 4. Eventually the victim was able to escape.

"The police were called and transported the victim to the
Mount Auburn Hospital in Cambridge where she was admitted
and underwent emergency surgery.  The victim suffered
extensive crush lacerations of the forehead, the lower
region of her eyelid, the left ear, the nose, and the scalp.
The laceration of the eyelid went down to the level of the
bone, and the laceration of the left ear went through the
cartilage and nearly severed her ear.  She suffered a
compound displaced fracture of the nose, fracture of the
jaw, fracture of the left infraorbital rim of the eye, and a
linear fracture of the left temporal bone of her skull."
Exhibit 4.

Mr. Murphy fled the Commonwealth of Massachusetts following
his brutal attack.  He was subsequently arrested in New York
City, and was returned to this Commonwealth by the State and
local police.  Exhibit 4.

Mr. Murphy has finished serving his sentence and is being
held at Bridgewater Treatment Center awaiting decision on
the Commonwealth's Petition.  At no time during his
incarceration has he participated in any Sex Offender
Treatment, although such treatments were available to him
when he was incarcerated at Norfolk, Gardner and at the
Treatment Center.

---

[10]   The opinion does not include a matching quotation mark.

During his incarceration, Mr. Murphy has achieved at least
6810 disciplinary reports, including several for possessing/
manufacturing weapons, two for possessing pornography and
several for being involved in group disturbances and fights
with other inmates and correction officers.

In September 1989, after Mr. Murphy's arrest for the
Governing Offense, he wrote a letter to the mother of his
child. Notwithstanding his arrest and being in custody on
these extremely serious charges, this letter (Ex. 7)
contained numerous explicit violent threats both as to her
and her then-current boyfriend. This Court declines to
accept his suggestion at trial that this letter was a
reasonable response to an August 1989 letter from his
girlfriend breaking up with him.

Two experts, Dr. Carole Feldman and Dr. Cornelius Kiley,
testified for the Commonwealth.  Mr. Murphy declined three
opportunities to be interviewed by Dr. Carole Feldman who
twice traveled to the Treatment Center for that purpose.
Mr. Murphy did participate in an interview by Dr. Kiley on
May 11, 2009. During that interview, Mr. Murphy denied any
responsibility for either the 1987 or 1989 offenses and
expressed no empathy or compassion for either of the
victims.  While Mr. Murphy was polite and behaved
appropriately during this interview, he did not provide Dr.
Kiley with much personal information except to acknowledge
that he was born in Boston, had been employed in two
different jobs, each for one year, had attempted suicide
twice while incarcerated, had never been married, had one
child, and lived "on and off' for four years with the mother
of his child, the longest time being approximately three
years.

I do not accept that, in fact, Mr. Murphy had lived for even
two years with this girlfriend as by 1989, when he first was
arrested, he was only 20 years old.  I accept that he has
been in custody since being arrested on the 1989 Governing
Offense.  I do not credit that he ever had the time, given
his age and the special schools he was attending, to have
lived with any girlfriend for two or more years before his
arrest on the 1989 Governing Offenses.

The documents offered in evidence also reveal, and I accept,
that Mr. Murphy has a juvenile criminal record, and was in
trouble with the law before the age of 15.  Mr. Murphy has
achieved an extremely high incidence of disciplinary reports
since his 1990 incarceration.  Even if Mr. Murphy's

19

incidence of "D" reports has decreased somewhat in the years
since 2000, he has still obtained numerous "D" reports in
the past decade, including ones for serious offenses, such
as possession of pornographic materials, and unruly
behavior.  He has had numerous run-ins with correction
officers and other inmates during his incarceration,
including threatening to kill a person in 1991 and has more
than once been caught possessing one or more weapons.

Dr. Feldman opined that Mr. Murphy is a Sexually Dangerous
Person, relying on his records, his prior convictions
including that the 1989 Governing Offenses occurred while he
was on probation, his numerous (at least 64 "D" reports
while incarcerated and 4 while awaiting trial at the
Treatment Center). In Dr. Feldman's and Dr. Kiley's
opinions, which I accept, Mr. Murphy has a number of risk
factors to re-offend sexually if released, including:

1) prior sex offenses;
2) on victims unrelated to him;
3) deviant sexual arousal;
4) inability to abide by rule of Probation as well as the
institutional rules of the prisons;
5) convictions for non-sexual violence;
6) has not lived with a lover for 2 or more years;
7) four or more sentencing dates;
8) index offense convictions for non-sexual violence.

In the opinions of both experts, Mr. Murphy is at high risk
to reoffend sexually if not confined.  I accept that Mr.
Murphy is at high risk to sexually recidivate, i.e. to
reoffend sexually if not confined.

Deviant sexual arousal as well as an inability to abide by
society's rules are robust factors in assessing sexual
dangerousness/likelihood to recidivate sexually.  I accept
that Mr. Murphy's attempts to rape the 16 year old while
also committing mayhem on her indicates a serious deviant
arousal problem.  I also accept that the numerous "D"
reports he has achieved in the past 20 years indicates his
inability to comply with the rules of the society in which
he is living.  That the 1989 Governing Offenses were
committed while Mr. Murphy was already on probation is also
strong indication of Mr. Murphy's inability to control his
sexual impulses even if he were released to begin his three
years of probation.

I also accept Dr. Feldman's opinion that [petitioner's] age

20

of 41 years is not a protective factor of his sexual
dangerousness, i.e. not one that would decrease his risk to
reoffend sexually.  Mr. Murphy is not even close to 50,
which is when a more dramatic decrease in recidivism has
been shown in the literature to occur.

In Dr. Feldman's opinion, which I credit, Mr. Murphy has
anti-social personality disorder.  I am satisfied that Mr.
Murphy has anti-social personality disorder, even as defined
in DSM-IV, though that is not statutorily required.  I also
accept Dr. Feldman and Dr. Kiley's opinion that Mr. Murphy
is unable to control his behavior, and that he has a
reckless disregard of the health and safety of others.  Due
to these factors as well as Mr. Murphy's lack of remorse or
compassion for either of his victims, I accept both expert's
conclusions that Mr. Murphy is not able to control his
sexual impulses if released.  I am convinced beyond a
reasonable doubt that Mr. Murphy is unable to control his
sexual impulses if not confined.

(Docket Entry # 21, S.A. 144-150).

## DISCUSSION

I.  State Law

    Initially, respondent argues that the petition presents

solely issues of state law.  Respondent submits that the ground

for relief, which alleges that section 14(b) does not "authorize

a state court to compel an individual to interview with both

state court-appointed qualified examiners and condition his

request for defense funds to hire experts on his behalf upon the

completion of his interviews with both of the state qualified

examiners," is based on state law and, accordingly, not

cognizable on habeas review.  (Docket Entry # 43).

    If this was the only basis for the ground for relief, the

argument would be well taken.  It is axiomatic that section

2254(a) jurisdictionally limits federal habeas relief to state convictions "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); see also 28 U.S.C. § 2241(c); Swarthout v. Cooke, 562 U.S. 216, 219 (2011) ("'"federal habeas corpus relief does not lie for errors of state law"'"); Brown v. O'Brien, 666 F.3d 818, 824 (1st Cir. 2012) ("[o]rdinarily, errors of state law are not the basis for federal habeas relief"); 1-9 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 9.1 (7th ed. 2015) ("jurisdictional prerequisite[] for federal habeas corpus review" requires a claim that custody was imposed "'in violation of the Constitution or laws or treaties of the United States'").  Errors of state law that do not rise to the level of a constitutional error "may not be corrected on federal habeas."  Gilmore v. Taylor, 508 U.S. 333, 348-349 (1993) (O'Connor, J. concurring); Sawyer v. Smith, 497 U.S. 227, 239 (1990) ("availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution"); accord Sanna v. DiPaolo, 265 F.3d 1, 12-13 (1st Cir. 2001) (habeas review unavailable for state law error except "extreme cases" where state law or practice betrays "fundamental principle of justice" under the Due Process Clause).  Errors in the admission or exclusion of evidence under state law fall within the reach of this principle.  See Estelle v. McGuire, 502 U.S. 62, 67 (1991) (noting that incorrect admission of evidence under state law does not provide basis for habeas relief); see also Marshall v.

Lonberger, 459 U.S. 422, 438 n.6 (1983) ("Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules").  Thus, to the extent the ground for relief alleges a state law violation that the trial court's conditional Order contravened section 14(a), it is subject to dismissal.

The ground for relief, as supplemented by the supporting memoranda, however, raises violations of federal constitutional law.  In particular, the petition and supporting memoranda allege that conditioning petitioner's request for funds to hire two experts on his completion of interviews with both of the Commonwealth's qualified examiners:  denied him procedural and substantive due process; infringed his right to effective assistance of counsel through the denial of funds; and denied him the right to present a defense.[11]  (Docket Entry # 1) (Docket Entry ## 2, 25, pp. 2, 8, 14, 24-35).  Accordingly, because these claim[s], all grounded upon the trial court's compelling petitioner to interview with both of the Commonwealth's qualified

_____

[11]  The boundaries of the federal due process claim in relation to the analogous state law claim is addressed in greater detail infra.  Separately, although the supporting memoranda refer in passing to other constitutional rights, such as the right to equal protection, see fn. 2, petitioner makes no developed argument relative to these constitutional rights.  He therefore waives these issues.  See Logan v. Gelb, 790 F.3d at 70 (by failing to include due process argument in the habeas petition, Logan waived the due process claim); see also Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010) ("district court was 'free to disregard' the state law argument that was not developed in Coons's brief").

examiners as a condition of allowing his request for funds to hire his experts, are not based on state law, respondent's state law argument does not warrant their dismissal.

II.  Procedural Default

Respondent also contends that the appeals court rejected the due process claim due to a procedural default.  According to respondent, the appeals court decided the claim on the basis of a waiver because petitioner did not file an interlocutory appeal and did not object to the condition.

It is well settled that federal courts are barred from reviewing state court decisions that rest on "independent and adequate state ground[s]."  Trest v. Cain, 522 U.S. 87, 89 (1997).  As recently expressed by the First Circuit, federal habeas review is "precluded if there is an independent and adequate state law ground supporting the state court's decision." Lee v. Corsini, 777 F.3d 46, 54 (1st Cir. 2015).  A state procedural rule is "adequate" as "'long as the state regularly follows the rule and has not waived it by relying on some other ground.'"  Id. (quoting Jewett v. Brady, 634 F.3d 67, 76 (1st Cir. 2011)).

The portion of the appeal court's decision that rests on the procedural default, however, is the one addressing the state law issue of the violation of chapter 123A at the beginning of the decision.  The only decision cited is Connors, a decision

addressing primarily state law with respect to sections 13(a),
13(d) and 14(b) of chapter 123A.  (Docket Entry # 21, S.A. 433).
It is only at the end of the opinion that the appeals court
addressed and rejected the constitutional claims.  (Docket Entry
# 21, S.A. 434) ("discern[ing] no merit in any of" the "plethora
of additional claims," including "ineffective assistance of
counsel" and "violations of the United States Constitution").
Specifically, "for substantially the reasons set" out in the
Commonwealth's brief at pages 31 to 35, the appeals court
rejected the "ineffective assistance of counsel" claim as well as
the right to present a defense claim (which was addressed in the
Commonwealth's brief at one of the cited pages) in the final
paragraph of the opinion.  (Docket Entry # 21, S.A. 399-403,
434).  The language in this final section of the opinion
describing these additional claims in constitutional terminology
clarifies that the earlier discussion under the separate section
captioned "[c]onditions attached to expert funds" that applied
the waiver doctrine did not involve a waiver of the
constitutional claims.

The structure of the appeals court decision also adheres to
the structure of the Commonwealth's appellate brief, further
confirming that the appeals court did not apply the waiver to the
constitutional claims.  Like the appeals court decision, the
Commonwealth's appellate brief addressed the state law violation

(Docket Entry # 21, S.A. 384-393) separate and apart from
addressing the constitutional violations at the end of the brief
(Docket Entry # 21, S.A. 399-402).

Finally, the section of the appeals court decision
addressing the constitutional claims did not preface the
discussion with language indicative of already finding a waiver
or addressing the claims in the alternative.  Accordingly, the
appeals court did not find that the constitutional claims were
waived and the procedural default doctrine does not apply to the
constitutional claims.

III.  Section 2254(d) and De Novo Review

Respondent next argues that, to the extent petitioner raises
a federal due process claim, it lacks merit applying either the
deferential section 2254(d) review or de novo review.  "To the
extent" petitioner raises claims that the conditional allowance
of his motion for funds violated his right to present a defense
or other constitutional rights, respondent asserts that the
claims do not withstand section 2254(d) review or de novo review.
(Docket Entry # 43, pp. 25-26).  Petitioner maintains that the
appeals court refused to decide the federal constitutional claims
and the statutory violations thereby warranting de novo review.
(Docket Entry ## 2, 25).

The applicable standard of review of the state court's
decisions on the federal constitutional claims depends upon

whether the state court rendered a decision on the merits of the federal claims.  28 U.S.C. § 2254(d); <u>see</u> <u>Lyons v. Brady</u>, 666 F.3d 51, 53-54 (1st Cir. 2012) ("standard of review of the SJC's decision depends on whether that court 'adjudicated on the merits' [Lyons's due process] claim"); <u>Pike v. Guarino</u>, 492 F.3d 61, 67 (1st Cir. 2007).  By its terms, section 2254(d) review only applies to adjudications by a state court "on the merits." 28 U.S.C. § 2254(d).

Section 2254(d) nevertheless "'does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits."'"  <u>Johnson v. Williams</u>, 133 S.Ct. 1088, 1094 (2013).  Consequently, "When a *federal* claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  <u>Harrington v. Richter</u>, 562 U.S. 86, 99 (2011) (emphasis added).  On the other hand, if a petitioner fails to "'fairly present'" a federal claim for purposes of exhaustion to "'each appropriate state court,'" then "the <u>Richter</u> presumption is fully rebutted."  <u>Johnson v. Williams</u>, 133 S.Ct. at 1097 n.3.  As further explained in <u>Johnson</u>, "a state court may not regard a fleeting reference to a provision of the Federal Constitution or federal precedent as sufficient to raise a separate federal claim" and, like federal courts, state appellate courts are entitled to "refuse to take

27

cognizance of arguments that are made in passing without proper development."  Id. at 1095.

Here, the appeals court rendered a decision on the merits of the right to present a defense claim.  Specifically, the appeals court denied petitioner's "[a]dditional claims," including those for the "violation[] of the United States Constitution[,] . . . for substantially the reasons set forth in the Commonwealth's brief at pages 31 through 35."[12]  (Docket Entry # 21, S.A. 434) (italics omitted).  At one of the cited pages, the Commonwealth's brief asserted it was proper to exclude a defense expert and, consequently, there was no denial of the right to present a defense.  (Docket Entry # 21, S.A. 399).  This merits review therefore triggers section 2254(d) review.

As to the ineffective assistance of counsel claim, the appeals court decision expressly referred to the "ineffective assistance of counsel" claim and denied it for reasons stated in the Commonwealth's brief at pages 31 to 35.  (Docket Entry # 21, S.A. 434).  The Commonwealth's only argument to deny the ineffective assistance of counsel claim was based on the independent and adequate state law ground of not presenting an acceptable appellate argument because petitioner did not explain "how his counsel was ineffective."  (Docket Entry # 21, S.A.

_____

[12]  The appeals court decision, as opposed to the SJC's summary denial of the ALOFAR, constitutes the relevant state court decision.  See id. at 1094 n.1; see also Foxworth v. St. Amand, 570 F.3d 414, 425-26 (1st Cir. 2009).

400).  Because the appeals court provided reasons and an
explanation for the decision on the federal ineffective
assistance of counsel claim that petitioner presented, the
Richter presumption of a merits review does not apply.  See
Dennis v. Secretary, Pennsylvania Dept. of Corrections, 2016 WL
4440925, at *14 (3rd Cir. Aug. 23, 2016) (noting that courts of
appeals have "limited Richter's gap-filling instruction to the
bare ruling situation").

In addition, the appeals court decision on the federal
ineffective assistance of counsel claim raised by petitioner
(Docket Entry # 21, S.A. 35) is more than likely shielded from
federal habeas review under the procedural default doctrine
because it rests on an independent and adequate state law
ground.[13]  See Coleman v. Thompson, 501 U.S. 722, 729-732 (1991);
Logan v. Gelb, 790 F.3d at 70 ("we ordinarily may not second
guess a state court's rejection of a claim on the basis of an
independent and adequate state procedural rule").  "Without the
[procedural default] rule," federal "habeas would offer state
prisoners whose custody was supported by independent and adequate

---

[13]  Massachusetts courts consistently reject conclusory
arguments as waived.  See, e.g., Kelley v. Neilson, 745 N.E.2d
952, 960 n.17 (Mass. 2001); Vakil v. Anaesthesiology Associates
of Taunton, Inc., 744 N.E.2d 651, 656 (Mass.App.Ct. 2001);
Commonwealth v. Lameire, 737 N.E.2d 469, 475 (Mass.App.Ct. 2000);
Commonwealth v. Russo, 731 N.E.2d 108, 113 (Mass.App.Ct. 2000).
The rule requiring non-conclusory arguments in appellate briefs
is therefore "a 'firmly established and regularly followed state
practice.'"  Ford v. Georgia, 498 U.S. 411, 423-424 (1991).

state grounds an end run around the limits of this Court's
jurisdiction and a means to undermine the State's interest in
enforcing its laws." Id. at 730-731.

Nevertheless, it is not necessary to sua sponte decide
petitioner's procedural default of the ineffective assistance of
counsel claim or require further briefing,[14] because petitioner
presents a different federal ineffective assistance of counsel
claim to this court. See generally Domainque v. Butterworth, 641
F.2d 8, 12 (1st Cir. 1981) ("Domaingue's present claim of
ineffective assistance of counsel is materially broader than the
one he originally presented to the Massachusetts Appeals Court");
In Romero-Hernandez v. Mercado-Quinonez, 94 F.Supp.3d 118, 120
(D.P.R. 2015); Fahey v. Dickhaut, 1994 WL 376279, at *2 (D.Mass.
July 15, 1994) (discussing Domainque v. Butterworth, 641 F.2d at
12-13). Before the appeals court, petitioner presented a typical
Strickland v. Washington, 466 U.S. 668 (1984) ("Strickland"),
ineffective assistance of counsel claim based upon counsel's
deficient performance, namely, the failure to file the
interlocutory appeal that counsel prepared and the need for
petitioner to explain the illegality of the March 18, 2009 Order
to counsel. (Docket Entry # 21, S.A. 4, 35, 420-421). Here, he

---

[14]   In opposing the petition, respondent addressed the
procedural default of the due process claim but did not address
the procedural default of the ineffective assistance of counsel
claim. (Docket Entry # 43, p. 18).

asserts a denial of effective assistance of counsel because *the trial court* compelled him to interview with both qualified examiners as a condition of allowing his "request for defense funds to hire" his own experts. (Docket Entry ## 2, 25, pp. 2, 24-25). Thus, according to petitioner, the trial court's denial of funding for petitioner's experts "made counsel's appearance meaningless." (Docket Entry # 45, p. 14).[15] Citing United States v. Cronic, 466 U.S. 648, 659 (1984) ("Cronic"), petitioner asserts that, "When a Court denies counsel basic funds to obtain experts for the defense and hampers trial preparation, a defendant is denied this fundamental constitutional right." (Docket Entry # 45, p. 14).

Although "both Cronic and Strickland concern Sixth Amendment violations, they are distinct legal claims and the difference between the two 'is not of degree but of kind.'" Fusi v. O'Brien, 621 F.3d 1, 6 (1st Cir. 2010) (quoting Bell v. Cone, 535 U.S. 685, 697 (2002)). A "defendant's reliance on one theory in state court does not exhaust the other." Id. Because petitioner did not fairly present his current ineffective assistance of counsel claim to the state courts, neither the SJC nor the appeals court adjudicated the claim on the "merits" within the

---

[15]  Because petitioner is proceeding pro se, this court construes the conclusory ineffective assistance of counsel claim in the supporting memoranda (Docket Entry ## 2, 25, pp. 2, 24-25) in the context of his elucidation of the claim in his opposition to respondent's memorandum. (Docket Entry # 45, p. 14).

meaning of section 2254(d).  See Johnson v. Williams, 133 S.Ct. at 1097 n.3.  Hence, review is de novo and, notwithstanding the failure to exhaust state court remedies, a petition may be denied.  See 28 U.S.C. § 2254(b)(2); see also 28 U.S.C. § 2254(b)(1)(A) (petition "shall not be granted unless it appears that . . . applicant has exhausted the remedies available in the courts of the State").

With respect to the due process claim, petitioner presented a federal due process claim to the SJC in the ALOFAR (Docket Entry # 21, S.A. 261, 262) (citing Fourteenth Amendment and referring to violations of "due process") and to the appeals court (Docket Entry # 21, S.A. 412-416).  The claim is similar to the federal due process claim in the supporting memoranda. (Docket Entry # 21, S.A. 261-267, 412-416) (Docket Entry ## 2, 25, pp. 12-13, 34-35).  Without comment, the SJC summarily denied the ALOFAR.  Moreover, the ALOFAR squarely and undeniably in the statement of points subject to review and the body of the brief presented the federal due process claim.  (Docket Entry # 21, S.A. 261-265).  The Richter presumption, which is unrebutted, therefore leads to a conclusion that the SJC denied the due process claim on the merits.  Although the Commonwealth's brief at pages 31 to 35 did not address a "due process" claim as such, the appeals court stated that petitioner raised a "plethora of additional claims," including "violations of the United States Constiuttion[,]" and "discern[ed] no merit in any of these

claims," albeit for substantially the reasons set out in the Commonwealth's brief.  (Docket Entry # 21, S.A. 434).  Finding no reason sufficient to overcome and rebut the <u>Richter</u> presumption and conclude that the appeals court somehow overlooked the federal claim, section 2254(d) review applies.[16]  <u>See</u> <u>Johnson v. Williams</u>, 133 S.Ct. at 1096 ("because it is by no means uncommon for a state court to fail to address separately a federal claim that the court has not simply overlooked, we see no sound reason for failing to apply the <u>Richter</u> presumption . . . but that presumption can in some limited circumstances be rebutted").

A.  <u>Ineffective Assistance</u>

Petitioner asserts that the trial court's conditional denial of funds for his experts unless he interviewed with the Commonwealth's qualified examiners denied him effective assistance of counsel under the Sixth Amendment.  (Docket Entry ## 2, 25, pp. 2, 4, 24-25) (Docket Entry # 45, pp. 14-15).  This court will assume, for purposes of argument only, that a constitutional right to counsel exists in petitioner's civil commitment SDP proceeding even though the Sixth Amendment does not apply to civil commitment proceedings as discussed in part III(B)(1).[17]  <u>Cf.</u> <u>Vitek v. Jones</u>, 445 U.S. 480, 488, 496-497

---

[16]  In the alternative, the federal due process claim fails to warrant habeas relief applying de novo review.

[17]  In presenting the ineffective assistance of counsel claim to the appeals court and to this court, petitioner relies

(1980); Brown v. Watters, 599 F.3d 602, 609 (7th Cir. 2010).
Citing Cronic, 466 U.S. at 659, petitioner maintains that the
denial of funds made counsel's representation meaningless.
(Docket Entry # 45, p. 14).  As previously explained, the claim
is subject to de novo review.

In order to succeed on an ineffective assistance of counsel
claim, a defendant ordinarily "must show that his attorney's
performance was deficient, and that the deficient performance
prejudiced his defense." Ortiz-Graulau v. U.S., 756 F.3d 12, 17
(1st Cir. 2014) (citing Strickland, 466 U.S. at 687), cert.
denied, 135 S.Ct. 1438 (2015).  Cronic, however, "permits a
presumption of prejudice if an actual or constructive denial of
counsel occurs during a critical stage of the trial." Fusi v.
O'Brien, 621 F.3d at 6.  The Court in Cronic:

> identified three specific circumstances that warranted the
> presumption.  See 466 U.S. at 659-662, 104 S.Ct. 2039.  The
> first and "most obvious" is a "complete denial of counsel .
> . . at a critical stage." Id. at 659, 104 S.Ct. 2039.  The
> second occurs "if counsel entirely fails to subject the
> prosecution's case to meaningful adversarial testing." Id.
> And, the third occurs when the circumstances are such that
> "even a fully competent attorney, could not provide
> effective assistance of counsel." Id. at 659-60, 104 S.Ct.
> 2039.

Fusi v. O'Brien, 621 F.3d at 7 (internal brackets omitted); see
Bell v. Cone, 535 U.S. at 696; see generally Morris v. Slappy,
461 U.S. 1, 11-12 (1983) ("[n]ot every restriction on counsel's .

---

exclusively on a Sixth Amendment ineffective assistance of
counsel claim.

. . opportunity to investigate . . . or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel").

With respect to the first exception, petitioner had counsel. With respect to the second exception, petitioner's counsel adequately cross-examined the Commonwealth's witnesses at trial and otherwise engaged in sufficient advocacy such that he subjected the case to meaningful adversarial testing. See Bell v. Cone, 535 U.S. at 697-698 ("[t]he aspects of counsel's performance challenged by respondent-the failure to adduce mitigating evidence and the waiver of closing argument-are plainly of the same ilk as other specific attorney errors we have held subject to Strickland's performance and prejudice components"); see, e.g., Ford v. Schofield, 488 F.Supp.2d 1258, 1368 (N.D.Ga. 2007) (claim alleging denial of funds for expert and investigators failed under second exception).

The argument petitioner makes regarding the court's placement of the condition upon the receipt of funds for his experts best comports with the third category of presumed prejudice. See, e.g., Ward v. Wilson, 2015 WL 5567180, at *14 (S.D.Ind. Sept. 22, 2015) ("Ward's Cronic arguments . . . that the trial court committed error by . . . denying funds for essential experts" implicated third exception), aff'd sub nom. Ward v. Neal, 2016 WL 4492479 (7th Cir. Aug. 26, 2016). "Circumstances falling into the third category include the

appointment of counsel 'so close upon trial as to amount to a
denial of effective and substantial aid.'"   <u>Fusi v. O'Brien</u>, 621
F.3d at 8.   Additional examples include:

> where the district court (1) prohibited direct examination
> of the defendant by his counsel, <u>see</u> <u>Ferguson v. Georgia</u>,
> 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961); (2)
> required defendants who choose to testify to do so before
> any other defense witnesses, <u>see</u> <u>Brooks v. Tennessee</u>, 406
> U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972); (3) refused
> to allow defense counsel closing argument in a bench trial,
> <u>see</u> <u>Herring</u>, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593;
> and (4) prohibited consultation between a defendant and his
> attorney during an overnight recess between direct and
> cross-examination of the defendant.

<u>U.S. v. Lustyik</u>, 2016 WL 4275592, at *5 (10th Cir. Aug. 15,
2016).   The restriction imposed by the trial court in the case at
bar is significantly less than the foregoing restrictions that
warranted a presumption of prejudice under <u>Cronic</u>.   Moreover, the
condition the trial court placed on petitioner's receipt of funds
did not entirely prohibit counsel from obtaining funds for
experts to testify on petitioner's behalf.   It only prevented the
receipt of funds if petitioner did not submit to the interviews
with the Commonwealth's two qualified examiners.   <u>See</u> <u>U.S. v.</u>
<u>Lustyik</u>, 2016 WL 4275592, at *5 (analyzing second exception but
noting that "where defense counsel's conduct has only been
partially restricted by the trial court, . . . the presumption of
prejudice does not apply").   The third exception in <u>Cronic</u>
therefore does not warrant a presumption of prejudice in the case
at bar.   Without the <u>Cronic</u> presumption, the claim fails to

warrant habeas relief.

Assuming dubitánte for purposes of argument that a procedural default does not apply with respect to a <u>Strickland</u> claim, counsel did not render ineffective performance even under de novo review.  Under the performance prong, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Strickland v. Washington</u>, 466 U.S. at 687.  The standard is "'highly deferential'" and it requires the petitioner "to 'overcome the presumption that the challenged action might be considered sound trial strategy.'"  <u>Pena v. Dickhaut</u>, 736 F.3d 600, 605 (1st Cir. 2013); <u>Strickland v. Washington</u>, 466 U.S. at 689 (there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").  Consequently, the ineffective assistance prong is satisfied "'only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it.'"  <u>Pena v. Dickhaut</u>, 736 F.3d at 605.  Reasonableness "includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'"  <u>Wiggins v. Smith</u>, 539 U.S. 510, 523 (2003).  Counsel's performance is not deficient when he fails to raise a futile argument.  <u>See</u> <u>Vieux v. Pepe</u>, 184 F.3d 59, 64 (1st Cir. 1999) ("counsel's performance was not deficient if he

declined to pursue a futile tactic"); see, e.g., Knight v. Spencer, 447 F.3d 6, 16 (1st Cir. 2006) ("Knight's counsel could not have rendered ineffective assistance in failing to object to alleged errors of state evidentiary law that" were nonexistent).

Here, counsel made a strategic decision not to pursue the expert funds issue after the trial court made it apparent in both the May 28 and August 20, 2009 Orders that it would enforce the condition. (Docket Entry # 21, S.A. 459-460). The trial court issued both orders after petitioner had completed the interview with Dr. Kiley such that an argument seeking expert funds for only one expert would likely be unsuccessful. In fact, the May 28, 2009 Order expressly recognized petitioner's refusal to "interview with one of them" and enforced the condition. (Docket Entry # 21, S.A. 236) (emphasis added). Counsel did not overlook the argument because he included it in the draft application for an interlocutory appeal. (Docket Entry # 21, S.A. 125). Thus, "under the applicable objective standard," petitioner's "counsel could have knowingly and reasonably declined to raise the" argument "because doing so would be a waste of the defense's time, energy, and resources." Bucci v. U.S., 662 F.3d 18, 31 (1st Cir. 2011).

The remaining arguments relative to the expert funds issue were also decidedly weak. Although not precisely on point,[18] the

_____

[18]   See footnote seven.

Connors decision sufficiently established that the arguments, including the argument that the trial court exceeded its role under the statute, were not well taken.  Although petitioner cites Commonwealth v. Matranga, 914 N.E.2d 17 (Mass. 2009), to support the argument that the trial court exceeded its statutory authority, the decision fails to create a strong argument that counsel should have pursued.[19]  The decision addressed the trial court's authority to order the Committee for Public Counsel Services "to withhold the payment of funds to an expert witness for services provided in [that] case until a certain amount that the judge had ordered withheld from the same expert witness in an earlier, unrelated case had been satisfied."  Id. at 18.  As such, it is factually distinguishable.

In sum, any Strickland claim based on counsel's failure to more forcefully or aggressively challenge the conditional rulings fails on de novo review.  Accordingly, applying de novo review, the ineffective assistance of counsel claim does not warrant habeas relief.[20]

B.  Right to Present a Defense and Due Process

---

[19]  The SJC decided the case after the trial court's rulings on petitioner's motion for funds albeit prior to trial.

[20]  Although de novo review "does not eliminate the need for a habeas court to engage in the analysis" required under Teague v. Lane, 489 U.S. 288 (1989), Kater v. Maloney, 459 F.3d 56, 63 (1st Cir. 2006), the analysis is immaterial here because the ineffective assistance of counsel claim does not implicate a new rule.  See Logan v. Gelb, 790 F.3d at 70-71 n.4.

The remaining claims, i.e., the right to present a defense and violations of due process, are subject to the deferential standard of review under section 2254(d)(1).  See, e.g., Young v. Murphy, 615 F.3d 59, 65 (1st Cir. 2010) (applying section 2254(d) review to civil commitment of SDP under chapter 123A). Petitioner's arguments do not invoke a section 2254(d)(2) analysis.  At best, petitioner's complaints regarding certain "facts" cite section 2254(e)(1) and raise legal arguments.  The section 2254(e)(1) presumption, however, only applies to facts, including historical facts and the credibility of their narrators.  See Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2006).  It does not apply to a legal determination made by a state court.  See Teti v. Bender, 507 F.3d at 60 ("determination by the state trial judge would be a legal-not factual-conclusion and thus not relevant to the § 2254(e)(1) inquiry").  Plaintiff's contention that the trial court unreasonably determined the facts regarding petitioner's legal right under section 14(b) to obtain funding presents a legal argument concerning the court's compliance with the state statute.

Section 2254(d)(1) establishes "two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 404 (2000).  Under the first category, "A state court determination is 'contrary to' clearly

established law 'if the court "'applies a rule that contradicts the governing law set forth' by the Supreme Court or 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'"'" Linton v. Saba, 812 F.3d 112, 122 (1st Cir. 2016) (quoting Hensley v. Roden, 755 F.3d 724, 730–731 (1st Cir. 2014)); accord Ramdass v. Angelone, 530 U.S. 156, 165-166 (2000) (decision is contrary to "clearly established federal law if it applies a legal rule that contradicts" the "prior holdings" of Supreme Court or "reaches a different result from" Supreme Court case "despite confronting indistinguishable facts"). Under the second category, the federal court may grant the writ if the relevant state court decision "'involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. at 404-405 (quoting statute with ellipses omitted).

An unreasonable application of clearly established federal law occurs if a state court decision "correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S.Ct. 1697, 1706 (2014); Cullen v. Pinholster, 563 U.S. at 182. A state court does not unreasonably apply clearly established Supreme Court law by simply refusing to extend it "'"to a context in which the principle should have controlled."'" White v. Woodall, 134 S.Ct. at 1705 (internal ellipses omitted). In order

41

to obtain federal habeas relief, "'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. at 1702 (quoting Harrington v. Richter, 562 U.S. at 103). Habeas relief under section 2254(d)(1) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." Id. at 1706-1707; see Linton v. Saba, 812 F.3d at 122-123 ("state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision") (internal quotation marks and brackets omitted).

An objectively unreasonable application of the relevant jurisprudence differs from an incorrect or erroneous application of such jurisprudence. Williams v. Taylor, 529 U.S. at 411; accord Wiggins v. Smith, 539 U.S. at 520-521 ("state court's decision must have been more than incorrect or erroneous"). Under the unreasonable application prong, the "habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 411; accord Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("question under

AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable--a substantially higher threshold").

"[C]learly established Federal law . . . includes only the holdings, as opposed to the dicta, of" Supreme Court decisions at the time of the state court decision.  White v. Woodall, 134 S.Ct. at 1702 (internal brackets and quotation marks omitted); Yeboah-Sefah v. Ficco, 556 F.3d 53, 65 (1st Cir. 2009) (clearly established federal law refers to "'holdings, as opposed to the dicta, of the *Supreme Court's* decisions at the time of the relevant state court decision'") (internal brackets omitted). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" Parker v. Matthews, 132 S.Ct. 2148, 2155 (2012), and "diverging approaches" to an issue in courts of appeals may "illustrate the possibility of fairminded disagreement."  White v. Woodall, 134 S.Ct. at 1703 n.3.

1.  Right to Present a Defense

In the supporting memoranda, petitioner argues that the trial court's requirement of an interview with the Commonwealth's two qualified examiners as a condition to obtain funding for his experts deprived him of his "right to present a defense" based only on a record review under the Sixth Amendment as applied to

the states under the Fourteenth Amendment.[21]   (Docket Entry # 2,
25, pp. 2-3, 14) (citing Commonwealth v. Connors, 850 N.E.2d at
1041 n.6).   Petitioner submits that the condition, which denied
him experts to conduct a record review as well as a personal
interview, resulted in "an imbalance of the evidence."   (Docket
Entry ## 2, 25, pp. 14-15) (citing Commonwealth v. Connors, 850
N.E.2d at 1041 n.8).   Respondent argues that, because it was
proper to exclude a defense expert, the trial court did not deny
petitioner the right to present a defense.   (Docket Entry # 43,
pp. 25-26).

    "The starting point for cases subject to" section 2254(d)(1)
review "is to identify the 'clearly established Federal law, as
determined by the Supreme Court of the United States' that
governs the habeas petitioner's claims."   Marshall v. Rodgers,
133 S.Ct. 1446, 1449 (2013).   "If there is no clearly established
federal law, 'then per force the state court decision cannot be
contrary to clearly established federal law.'"   Fay v. O'Brien,
2016 WL 1589830, at *3 (D.Mass. Apr. 20, 2016) (quoting Likely v.
Ruane, 642 F.3d 99, 102 (1st Cir. 2011)) (ellipses omitted).

    Here, as in Kansas v. Hendricks, 521 U.S. 346 (1997) (civil

_____

    [21]   The claim is sufficiently similar to the Fourteenth
Amendment claim petitioner presented to the appeals court which
the court denied on the merits.   (Docket Entry # 21, S.A. 34-35,
399, 434).   Separately, petitioner makes a similar claim under
the Due Process Clause based on the denial of funding for his
experts and resulting inability to retain an expert to conduct a
record review and/or a personal interview.   (Docket Entry ## 2,
25).

commitment proceeding under "sexually violent predator" statute), and <u>Seling v. Young</u>, 531 U.S. 250 (2001) (civil commitment proceeding for "sexually violent predator"), the civil commitment under the Massachusetts statute was not a criminal proceeding and petitioner's rights therefore emanate from the Due Process Clause as opposed to the Sixth Amendment.  See <u>Seling v. Young</u>, 531 U.S. at 261 (question whether statute "is civil or punitive in nature is initially one of statutory construction" and court will reject "legislature's manifest intent" to establish civil proceeding "only where a party challenging the Act provides the clearest proof that the statutory scheme is so punitive in either purpose or effect as to negate the State's intention"); U.S.Const.amend. VI ("In all *criminal* prosecutions, . . ..") (emphasis added).  In addition, the Sixth Amendment as opposed to the Due Process Clause creates a right to present a defense, <u>see McCuistion v. Washington State Attorney General's Office</u>, 2007 WL 1059942, at *9 (W.D.Wash. Apr. 6, 2007) (while "Supreme Court has established a Sixth Amendment right to present a defense in a criminal trial, the Supreme Court has not extended this right to civil commitment proceedings"), and the SDP *civil* proceeding is not a criminal prosecution subject to the Sixth Amendment.  See <u>Commonwealth v. Bruno</u>, 735 N.E.2d 1222, 1231-1232 (Mass. 2000) (legislature intended chapter 123A "to be remedial" and "commitment proceedings under c. 123A are civil proceedings"); see <u>also</u> <u>Hernandez-Carrera v. Carlson</u>, 547 F.3d 1237, 1256 (10th Cir.

2008) ("both the standards of proof and the constitutional rights applicable in the case of civil commitment are distinct from those available in a criminal proceeding"); Sisneroz v. California, 2009 WL 302280, at *12 (E.D.Cal. Feb. 6, 2009) ("[p]rocedural due process safeguards attaching to civil commitments are not coextensive with those required in criminal proceedings governed by Sixth Amendment standards"). Consequently, there is no clearly established Supreme Court law that the Sixth Amendment's right to present a defense applies in civil commitment proceedings for sexually dangerous or violent persons.  The case cited by petitioner (Docket Entry ## 2, 25, p. 14), Washington v. Texas, 388 U.S. 14 (1967), addressed "the right of a defendant in a *criminal* case under the Sixth Amendment to have compulsory process for obtaining witnesses in his favor," which "is applicable to the States through the Fourteenth Amendment." Id. at 15 (emphasis added).

The right to present a defense claim under the Sixth Amendment therefore fails to warrant habeas relief.  The supporting memoranda, however, raise a similar if not identical claim under the Due Process Clause of the Fourteenth Amendment. Petitioner asserts that the condition requiring him to interview with the Commonwealth's two qualified examiners in order to obtain funds to retain an expert to testify at trial based on a record review and/or a personal interview violated due process. The claim is addressed in the next section.

2.  Due Process

46

As framed in the supporting memoranda and reiterated in reply to respondent's opposition memorandum, petitioner raises a number of procedural and substantive due process claims.[22]  In addition to the foregoing due process claim, petitioner asserts that the trial court did not inform petitioner about his "due process rights to expert funds" under section 14(b) before it commenced the trial.  (Docket Entry ## 2, 25, pp. 2, 14-15, 25, 32); Mass. Gen. L. ch. 123A, § 14(b) ("court shall inform the person named in the petition of his rights under this section before the trial commences").  Petitioner further maintains that section 14(b) creates certain "procedural safeguards" which the trial court must comply with in order to deprive him of his liberty interest by committing him to the treatment center. (Docket Entry ## 2, 25, pp. 2, 7).  In particular, he contends that the language of section 14(b) did not allow the trial court to condition his receipt of funds when the March 18, 2009 Order already determined that those funds were "necessary" and the compensation "reasonable."  (Docket Entry ## 2, 25, p. 13); see Mass. Gen. L. ch. 123A, § 14(b) (requiring court to determine if services are "necessary" and compensation "reasonable").  The trial court's condition purportedly went "'beyond the clear language'" of section 14(b), which mandates that, if the SDP

---

[22]  The bulk of the claims are procedural due process claims.

defendant is indigent, the court "shall" determine whether expert
services are necessary and "shall" determine reasonable
compensation and "approve payment." (Docket Entry ## 2, 25, pp.
2, 12-13, 34-35); Mass. Gen. L. ch. 123A, § 14(b). Thus, the
trial court "assumed an inappropriate role" by exceeding these
statutory requirements when it conditioned payment approval of
the expert funds it already had deemed "necessary" and
"reasonable" in amount on completion of the interviews with both
of the qualified examiners, according to petitioner. (Docket
Entry ## 2, 25, pp. 2-3, 12-14, 34-35). In short, petitioner
argues that the trial court's condition did not comply with the
state statute, was outside the discretion allowed the court under
section 14(b) and, accordingly, constituted a violation of due
process. (Docket Entry ## 2, 25, pp. 2-3, 12-14, 34-35).

Respondent succinctly summarizes the argument as "claim[ing]
that the state court assumed an inappropriate role in
conditioning the payment of funds for the petitioner to hire
experts upon the completion of interviews with two state
qualified examiners, in violation of G.L. c. 123A, § 14(b)."
(Docket Entry # 43, p. 23). Respondent further notes that
"petitioner appears to take issue with the [trial court's]
condition being made 'after a determination of both the necessary
and reasonable compensation standards." (Docket Entry # 43)
(Docket Entry # 2, 25, pp. 13).

Clearly established federal law as determined by the Supreme Court provides "that a convicted felon has a liberty interest in not being civilly committed without appropriate procedures to prove that commitment is warranted." Gilbert v. McCulloch, 776 F.3d 487, 492 (7th Cir. 2015) (citing Vitek v. Jones, 445 U.S. at 492-93); see generally Board of Regents v. Roth, 408 U.S. 564, 569 (1972) ("requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property").  It is also well established that, "[w]hile commitment proceedings under c. 123A are civil proceedings, the potential deprivation of liberty to those persons subjected to these proceedings mandates that due process protections apply." Mederos v. Murphy, 762 F.Supp.2d 209, 214 (D.Mass. 2010) (habeas petition challenging civil commitment under chapter 123A).

Clearly established Supreme Court law under the Due Process Clause in the specific context of civil commitment proceedings requires the confinement to adhere "to proper procedures and evidentiary standards." Kansas v. Hendricks, 521 U.S. 346, 357 (1997).  Whereas freedom from physical restraint "has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action," the Supreme Court has "consistently upheld . . . involuntary commitment statutes provided the confinement takes place *pursuant to proper*

49

*procedures and evidentiary standards.*"[23] <u>Kansas v. Hendricks</u>, 521 U.S. at 357 (examining civil commitment under Kansas Sexually Violent Predator Act) (emphasis added); <u>see also</u> <u>Kansas v. Crane</u>, 534 U.S. at 409; <u>Addington v. Texas</u>, 441 U.S. 418, 425 (1979) (Court has "repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection"); <u>see</u> <u>generally</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976).

Petitioner's due process claim that the trial court violated his due process rights by allowing the motion for funds on the condition that he complete interviews with the Commonwealth's two qualified examiners largely turns upon the intricacies of state evidentiary law that is not subject to habeas review.  <u>See</u> <u>Rivera v. Illinois</u>, 556 U.S. 148, 158 (2009) ("Due Process Clause, our decisions instruct, safeguards not the meticulous observance of state procedural prescriptions, but the 'fundamental elements of fairness in a criminal trial'").  Petitioner fairly presented the

---

[23]  More broadly, clearly established Supreme Court precedent in this area "requires 'a finding of dangerousness either to one's self or to others . . . coupled . . . with the proof of some additional factor, such as a "mental illness" or "mental abnormality"' in order to justify civil commitment." <u>Medina v. Corsini</u>, 2014 WL 1338143, at *5 (D.Mass. Apr. 1, 2014) (quoting <u>Kansas v. Crane</u>, 534 U.S. 407, 409 (2002)); <u>see</u> <u>Sisneroz v. California</u>, 2009 WL 302280, at *5 (due process satisfied if civil commitment schemes for sexually violent predator "follow 'proper procedures and evidentiary standards' and require proof of dangerousness plus proof of an additional factor, such as mental disorder").

due process claim to the appeals court (Docket Entry # 21, S.A. 26-35) and the appeals court rejected the claim (Docket Entry # 21, S.A. 434) based on the Commonwealth's argument which, citing Commonwealth v. Connors, 850 N.E.2d at 1042-1043 n.9, stated it was proper to deny funds and exclude a defense expert (Docket Entry # 21, S.A. 399).  The cited footnote in Connors explains that section 13(a) mandates the examination of an SDP defendant by two qualified examiners and that section 14(b) allows the defendant to retain his own expert.  The footnote further explains that a defendant "cannot be allowed to submit to interviews with his own expert, while denying interviews with" the two qualified examiners.  Id.

With respect to the *constitutional* procedural due process claim, the assessment entails the above noted clearly established law that civil commitment adhere "to proper procedures and evidentiary standards."  Kansas v. Hendricks, 521 U.S. at 357. In the somewhat analogous area of a prisoner's transfer to a mental hospital, the Supreme Court identified the following procedural due process safeguards:  (1) advance written notice; (2) a hearing at which petitioner is given notice "'of the evidence being relied upon'" and an opportunity to be heard and to "'present documentary evidence'"; (3) an opportunity at the hearing to present witnesses and "'to confront and cross-examine witnesses called by the state, except upon a finding, not

51

arbitrarily made, of good cause for not permitting such presentation, confrontation, or cross-examination'"; (4) "'[a]n independent decisionmaker'"; (5) a written decision; (6) "'an independent advisor'"; and (7) "'[e]ffective and timely notice of all these rights.'"[24] <u>Vitek v. Jones</u>, 445 U.S. at 495; <u>see</u>, <u>e.g.</u>, <u>Camrony v. Mayberg</u>, 2010 WL 3958648, at *9 (E.D.Cal. Oct. 8, 2010) (rejecting due process claim in sexually violent predator civil commitment proceeding based, in part, because petitioner received the "procedural protections identified in <u>Vitek</u>").

The state must also establish grounds for the civil commitment by clear and convincing evidence. <u>Addington v. Texas</u>, 441 U.S. at 433; <u>see</u> <u>Leck v. Strong</u>, 2016 WL 3023895, at *7 (W.D.Wash. Apr. 15, 2016) (discussing <u>Vitek</u> and <u>Addington</u> in context of habeas challenge by civilly committed sexually violent predator), report and recommendation adopted, 2016 WL 3000341

---

[24] The procedural safeguards under chapter 123A include examination by two qualified examiners, a right to counsel, an ability to retain a psychologist or psychiatrist to perform an examination on the SDP defendant's behalf and, if indigent and the court deems a qualified examiner necessary, a right to obtain an examiner at public expense. Mass. Gen. L. ch. 123A, §§ 13(c), 13(d), 14(b). The SDP defendant also receives a trial by a jury, unless waived, and a finding based on proof beyond a reasonable doubt. Mass. Gen. L. ch. 123A, § 15. Under section 14(c), the SDP defendant is entitled to the admission of documents and exhibits showing he is not an SDP. Mass. Gen. L. ch. 123A, § 14(c). The civil commitment process under chapter 123A is similar to the process under the state statute the Court upheld in <u>Kansas v. Hendricks</u>, 521 U.S. 346 (1997).

(W.D.Wash. May 25, 2016); see also Gilbert v. McCulloch, 776 F.3d
at 492 (citing Vitek, albeit not discussing specific procedural
requirements, in section 2254(d) challenge by civilly committed
sexually violent person).  The Court in Addington also recognizes
the need to "assess both the extent of the individual's interest
in not being involuntarily confined indefinitely and the state's
interest in committing the emotionally disturbed under a
particular standard of proof . . . mindful that the function of
legal process is to minimize the risk of erroneous decisions."
Addington v. Texas, 441 U.S. at 425 (citing Mathews v. Eldridge,
424 U.S. at 335, and Speiser v. Randall, 357 U.S. 513, 525–526
(1958)).  Beyond these requirements, there is no clearly
established Supreme Court precedent holding that denying funding
for an indigent defendant in a civil commitment proceeding to
retain experts unless the SDP defendant also submits to
examinations by the state's experts violates due process.
Accordingly, the appeals court did not confront a set of facts
materially indistinguishable from a Supreme Court decision and
arrive at a different result.  Nor did it apply a rule contrary
to clearly established Supreme Court law.  The issue therefore
reduces to whether the court unreasonably applied clearly
established Supreme Court due process law.

As noted above, Hendricks requires that SDP civil commitment
proceedings comply with "proper procedures and evidentiary

standards" and, in the context of a transfer of a prisoner to a mental hospital, <u>Vitek</u> dictates that the court provide an opportunity to "'present documentary evidence'" and witnesses. <u>Vitek v. Jones</u>, 445 U.S. at 495.  Here, the trial court's orders did not completely restrict petitioner's ability to obtain funding for an expert to conduct a review of the record and/or an interview and testify on petitioner's behalf at trial.  Rather, the trial court's orders prevented petitioner from retaining an expert to review the records only if petitioner refused to submit to the interviews.  Stated otherwise, petitioner had *an opportunity* to retain the experts if he complied with the condition.  Furthermore, nothing prevented petitioner from submitting to an interview with Dr. Feldman and thereby obtaining funds to retain his own experts and a record review by an expert on his behalf.[25]  Contrary to petitioner's argument, the trial court's rulings *avoided* the imbalance in the evidence that would occur if it allowed petitioner the funds for his experts and petitioner then refused to undergo interviews with the Commonwealth's two qualified examiners.  It was petitioner's refusal to interview with Dr. Feldman that led to an imbalance in

---

[25]  Where, similar to here, "a defendant voluntarily seeks to present expert psychiatric evidence, which includes his own statements, the defendant is not denied his privileges against self-incrimination if he is required to submit to an examination by the Commonwealth's psychiatrist as a condition of the admission of his evidence."  <u>Commonwealth v. Connors</u>, 850 N.E.2d at 1043 & n.10.

the evidence at trial.

In light of the above, the appeals court's rejection of the claim was not "so lacking in justification that there was an error . . . comprehended in existing law" that was "beyond any possibility for fairminded disagreement." White v. Woodall, 134 S.Ct. at 1702. Accordingly, the appeals court did not unreasonably apply the foregoing clearly established Supreme Court precedent requiring compliance with proper procedures and evidentiary standards and, more specifically, providing petitioner with an opportunity to present expert witnesses and documentary expert reports. Indeed, petitioner had a meaningful opportunity to obtain the funds to retain both experts as long as he submitted to the interview with Dr. Feldman. As such, the claim does not survive the unreasonable application prong which therefore prevents habeas relief.

Although this ends the matter, it is worth recognizing that the Supreme Court "grants fewer procedural safeguards to those detained for civil commitment than those detained for criminal acts." U.S. ex rel. Simmons v. Scott, 2014 WL 3906774, at *4 (N.D. Ill. Aug. 6, 2014) (citing Kansas v. Hendricks, 521 U.S. at 356); accord Addington v. Texas, 441 U.S. at 428 ("heavy standard applied in criminal cases manifests our concern that the risk of error to the individual must be minimized even at the risk that some who are guilty might go free" and "full force of that idea

does not apply to a civil commitment"). An examination of analogous processes afforded criminal defendants confirms that the appeals court did not unreasonably apply the foregoing clearly established Supreme Court law. A criminal defendant's right to present a defense is not unlimited. See Crane v. Kentucky, 476 U.S. 683, 690 (1986). Thus, "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense,'" but the Supreme Court also "recognize[s] that '"state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials,"'" and "[o]nly rarely" has the Supreme Court "held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." Nevada v. Jackson, 133 S.Ct. 1990, 1992 (2013) (citations omitted). In fact, the Supreme Court has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability--even if the defendant would prefer to see that evidence admitted." Crane v. Kentucky, 476 U.S. at 690.

In the case of a criminal defendant seeking to demonstrate "to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist

who will conduct an appropriate examination." <u>Ake v. Oklahoma</u>,
470 U.S. 68, 83 (1985). A criminal defendant's refusal to submit
to an examination, however, may lead a state or a federal court
to exclude the evidence. <u>See Robidoux v. O'Brien</u>, 643 F.3d 334,
341 (1st Cir. 2011) (citing Mass.R.Crim.P. 14(b)(2), (c)(2) and
<u>Commonwealth v. Guadalupe</u>, 516 N.E.2d 1159, 1161-62 (Mass.
1987)); Fed.R.Crim.P. 12.2(c), (d); Advisory Committee Notes,
Fed.R.Crim.P. 12.2 ("[s]ubdivision (d) confers authority on the
court to exclude expert testimony in behalf of a defendant . . .
who refuses to be examined by a court-appointed psychiatrist");
<u>see generally Richard S. v. Carpinello</u>, 589 F.3d 75, 82 (2nd Cir.
2009) (discussing analogies between insanity aquitees and
sexually dangerous civil defendants).

Here again, the trial court's rulings and the condition
imposed served the interest of fairness in maintaining a balance
in the evidence. <u>See Crane v. Kentucky</u>, 476 U.S. at 690. The
rulings avoided the circumstance of petitioner retaining funds
for his own experts and submitting to an interview while
simultaneously refusing to submit to interviews with the
Commonwealth's two qualified examiners. Moreover, petitioner was
given an opportunity to obtain the expert testimony if he
complied with the condition. In short, the due process claim
based on the denial of funding to retain an expert to conduct a
record review, interview and/or testify at trial does not provide

a basis for section 2254(d)(1) relief.

Petitioner next contends that the trial court did not inform petitioner about his "due process rights to expert funds" in accordance with section 14(b) before it commenced the trial. (Docket Entry ## 2, 25, pp. 2, 14-15, 25, 32); Mass. Gen. L. ch. 123A, § 14(b) ("court shall inform the person named in the petition of his rights under this section before the trial commences").  The foregoing clearly established law does not require notice of the right to obtain expert funds.  State law, namely, section 14(b), requires such notice but clearly established Supreme Court federal law only requires advance notice of the proceeding and notice "'of the evidence being relied upon,'" i.e., the Commonwealth's two qualified examiners. Petitioner received such notice because the reports of both examiners were filed in the trial court prior to trial.  (Docket Entry # 21, S.A. 114-115).  The appeals court decision was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court.  To the extent the claim was not addressed on the merits, de novo review fails given the absence of a violation of due process.

The due process claim regarding the trial court's exceeding its authority under section 14(b) and assuming an "inappropriate role" also lacks merit.  (Docket Entry ## 2, 25, p. 12).  Based solely on state law, this "due process" claim is not subject to

federal habeas review.  As previously indicated, the appeals court determined that the trial court's condition did not violate state law because petitioner's refusal to be interviewed made his own hiring of expert witnesses unnecessary.  (Docket Entry # 21, S.A. 433) (citing Commonwealth v. Connors, 850 N.E.2d at 1041-1042).  The appeals court examined the conditions the trial court attached to petitioner's expert funds and found them appropriate under state law or the argument waived.

Even assuming a federal due process claim, which this court doubts, in order to trigger habeas relief, "the state court's application of state law must be 'so arbitrary or capricious as to constitute an independent due process . . . violation.'" Coningford v. Rhode Island, 640 F.3d 478, 484 (1st Cir. 2011) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).  "The Supreme Court has 'defined the category of infractions that violate "fundamental fairness" very narrowly.'" Id. (quoting Dowling v. United States, 493 U.S. 342, 352 (1990).  The appeals court's decision was not contrary to this clearly established law.

It was also not an unreasonable application of such law. First, the underlying premise that the trial court's condition violated section 14(b) is not correct.  See Commonwealth v. Connors, 850 N.E.2d at 1041-1043 & n.9.  Second, the condition served the purpose of the statute to require two examinations by the court-appointed examiners to maintain the balance of the

evidence in SDP proceedings.  See id. ("statute's mandating of examinations by court-appointed examiners is included for the very purpose of correcting for any imbalance of evidence that could occur").  The motion sought funds for two experts and state case law instructs that a defendant "cannot be allowed to submit to interviews with his own expert, while denying interviews with court-appointed examiners."  Id.  The restriction served the purpose of the statute because it avoided the imbalance that might occur if petitioner retained an expert and submitted to an interview without also submitting to an interview with Dr. Feldman.

"'It is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute.'"  U.S. v. Dowdell, 595 F.3d 50, 71 (1st Cir. 2010).  A trial court can therefore impose the condition on a defendant's receipt of funds for expert witnesses under section 14(b) even though the language of that subsection states that the trial court "shall . . . determine" if the expert services are necessary "and shall determine reasonable compensation for such services" and, "[i]f the court so determines . . . shall approve payment.  Mass. Gen. L. ch. 123A, § 14(b).  Because the condition comports with the purpose of the statute, a trial court does not exceed its authority to impose the condition when it allows expert services for an SDP defendant.  See Dolan v. U.S. Postal

Service, 546 U.S. 481, 486 (2006) ("[i]nterpretation of a word or phrase depends upon reading the whole statutory text, considering *the purpose* and context of the statute" and "precedents or authorities that inform the analysis") (emphasis added). Thus, the appeals court's adjudication falls significantly short of an unreasonable application of the foregoing clearly established federal law as determined by the Supreme Court.

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[26] that the request to deny the petition in respondent's memorandum in opposition (Docket Entry # 43) be **ALLOWED** and that the petition be dismissed with prejudice.

```
   /s/ Marianne B. Bowler
MARIANNE B. BOWLER
United States Magistrate Judge
```

_____

[26] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. See Rule 72(b), Fed. R. Civ. P. Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.